UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY TOBIAS,

       Plaintiff,                                    Hon. Richard Alan Enslen

v.                                                      Case No. 4:05-CV-51

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 36 years of age at the time of the ALJ's decision. (Tr. 17). He successfully completed high school, as well as two years of college, and worked previously as a janitor and an auditor. (Tr. 17, 64, 79-82).

Plaintiff applied for benefits on December 17, 2002, alleging that he had been disabled since August 17, 2002, due to a spinal injury and degenerative disc disease. (Tr. 43-45, 58). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 29-42). On November 3, 2004, Plaintiff appeared before ALJ Patricia Hartman, with testimony being offered by Plaintiff and vocational expert, Sandra Steele. (Tr. 199-228). In a written decision dated November 17, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 16-24). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On April 23, 1988, Plaintiff "accidentally skied off a ridge, falling 40 feet, landing on his tail bone." (Tr. 103). Plaintiff was taken to a hospital where x-rays revealed that he suffered a compression fracture at T-12. Because doctors determined that this fracture was "unstable,"

Plaintiff underwent posterior spinal fusion surgery with the insertion of two Harrington rods which extended from T-9 to L2. X-rays taken immediately following this surgery revealed that the rods were in "good alignment."

X-rays of Plaintiff's spine, taken on June 3, 1988, revealed "good alignment and good healing." On June 9, 1988, Plaintiff was cleared to return to work, subject to the following limitations: (1) no lifting more than 25 pounds, (2) no contact sports, (3) no field duty (Plaintiff was in the United States Army at the time), and (4) no physical training. (Tr. 104).

In an undated report (completed sometime between the dates of August 27, 2002, and October 17, 2002), Dr. Debbie Hallek reported that Plaintiff was unable to sit or walk for "prolonged" periods. (Tr. 114). Specifically, the doctor reported that Plaintiff could sit for 15 minutes and walk for 20-30 minutes at one time. Dr. Hallek also reported that Plaintiff "becomes stressed and depressed easily." The doctor concluded that Plaintiff suffered from "severe limitation of functional capacity" and was unable to perform even "minimal" sedentary work activities. *Id.*

On December 4, 2002, Plaintiff was examined by Dr. Norman Miller. (Tr. 106-09). Plaintiff reported that he had been taking Vicodin and using a Duragesic patch for several years. (Tr. 106-07). Plaintiff indicated that he was seeking substance abuse services to help him withdraw from his narcotic pain medication. (Tr. 106). On examination Plaintiff exhibited "full" range of neck motion. (Tr. 108). An examination of Plaintiff's extremities was unremarkable. The results of a neurologic examination were unremarkable. Plaintiff exhibited no difficulty standing on his heels/toes and walked without difficulty. The results of a mental status examination were likewise unremarkable. *Id.*

On December 13, 2002, Plaintiff participated in a CT scan of the thoracolumbar spine. (Tr. 116-17). At the T10-L2 level, the examination revealed that the central spinal canal and neural foramina were "patent." There was evidence of disc herniation and disc space narrowing, but there was no evidence of osseous encroachment on the neural foramen or spinal canal. Plaintiff's fusion was "intact" with no evidence of abnormality. At the L4-5 level, the examination revealed "mild" bulging of the annulus fibrosis. However, there was no evidence of disc herniation, central canal stenosis, or neural foraminal stenosis. At the L5-6 level, the examination revealed "minor" narrowing of the left neural exit foramen secondary to "mild" facet hypertrophy. There was, however, no evidence of disc herniation and the central canal was "normally patent." At the L6-S1 level, the examination revealed "mild" stenosis, but no evidence of disc herniation. *Id.*

On December 16, 2002, Dr. Hallek reported that Plaintiff was "totally disabled from his current occupation secondary to his back injury." (Tr. 112). The doctor reported that Plaintiff "also has depression." *Id.*

On December 18, 2002, Plaintiff was examined by Dr. Akram Mahmoud. (Tr. 118-19). Plaintiff was able to ambulate without difficulty and straight leg raising was negative. *Id.* Patrick's sign was negative and Plaintiff exhibited 5/5 strength in his lower extremities. (Tr. 119). The doctor concluded that before he could properly assess Plaintiff's condition (and the best course of treatment therefor) Plaintiff should participate in a lumbar myelogram examination. *Id.*

On January 7, 2003, Plaintiff participated in a lumbar myelogram examination, the results of which were "normal" with no evidence of "intradural, extradural or intramedullary defect," spinal stenosis, or "significant nerve root canal narrowing." (Tr. 120). The examination also revealed that "the contour of the vertebral bodies appear[ed] normal throughout" and the

intervertebral spacings were well preserved." *Id.* After reviewing the results of this examination, Dr. Mahmoud concluded that surgical intervention was not warranted and that Plaintiff "would benefit from maximizing conservative therapy." (Tr. 159).

On January 22, 2004, Plaintiff was examined by Dr. Eugene Mitchell and Jeffrey Bucholz with the University of Michigan Center for Interventional Pain Medicine. (Tr. 161-63). The examination revealed that Plaintiff was in no acute distress. (Tr. 162). He was able to "ambulate normally with no gross lateral rising signs or difficulty weightbearing." Plaintiff exhibited "decreased" range of lumbar motion "consistent with his history of spinal fusion." The doctors also reported that "facet loading is negative today although there is some tenderness to palpation over the lower lobe, right-sided facet joints. He also has some mild tenderness to palpation along the midline of his back." An examination of Plaintiff's lower extremities revealed "decreased" sensation to both cold and pinprick at thigh level, but there was no evidence of motor deficits. Straight leg raising was also negative. The doctors concluded that Plaintiff "may very well be" a candidate for facet block therapy. *Id.*

On June 16, 2004, Dr. Hallek completed a report regarding Plaintiff's physical capabilities. (Tr. 158). The doctor reported that Plaintiff can frequently lift five pounds and can occasionally lift 20 pounds. Dr. Hallek reported that during an 8-hour day, Plaintiff can sit for one hour, stand for one hour, and walk for 20 minutes. The doctor reported that Plaintiff cannot perform pushing or pulling activities with his upper extremities and cannot use his lower extremities to operate foot controls. Finally, the doctor reported that Plaintiff can never bend, squat, crawl, climb, or pull. *Id.*

At the administrative hearing, Plaintiff testified that he experiences "constant" back pain which ranges from 7-10 (on a scale of 1-10). (Tr. 209-10). Plaintiff reported that the only thing which helps alleviate his back pain is lying in his recliner. (Tr. 211). Plaintiff testified that he can stand for 15 minutes, walk for one-half mile, sit for 15 minutes, and lift 10-15 pounds. *Id.* Plaintiff reported that if he stands or walks for longer than 15 minutes, it takes him "three or four days to recover from the pain." (Tr. 219). Plaintiff reported that he was no longer taking medication for his depression. (Tr. 212). He reported that he watches television 3-4 hours and reads for 2 hours daily. (Tr. 212-13). Plaintiff reported that on a typical day he helps his children get ready for school, cooks, washes dishes, and washes laundry. (Tr. 215-16). He also testified that he "sometimes" goes fishing with his two sons. (Tr. 216).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

7

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) status post spinal fusion, (2) asthma, (3) mood disorder, and (4) a history of narcotic medication abuse. (Tr. 19). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 19-23). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) he cannot lift or carry more than 10 pounds, (2) he cannot engage in prolonged sitting, standing, or walking, (3) he cannot work around hazardous machinery, (4) he cannot be exposed to extreme levels of dust, fumes, or humidity, and (5) he requires a sit-stand option. (Tr. 21).

With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild to moderate difficulties maintaining concentration, persistence or pace, and has never experienced episodes of deterioration or decompensation in work or work-like settings. The ALJ concluded that Plaintiff would experience "difficulty consistently carrying out complex or detailed instructions, and would be relegated to performing tasks of an unskilled 1-2 step variety." *Id.* After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that

9

a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

The vocational expert testified that there existed approximately 17,200 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 225-27). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Evaluated the Medical Evidence

As noted above, on December 16, 2002, Dr. Hallek reported that Plaintiff was "totally disabled from his current occupation secondary to his back injury." (Tr. 112). Moreover, in a report dated June 16, 2004, Dr. Hallek reported that during an 8-hour day, Plaintiff can sit for only one

10

hour, stand for only one hour, and walk for only 20 minutes. (Tr. 158). The doctor reported that while Plaintiff can frequently lift five pounds and occasionally lift 20 pounds, he cannot perform pushing or pulling activities with his upper extremities and cannot use his lower extremities to operate foot controls. The further doctor reported that Plaintiff can never bend, squat, crawl, climb, or pull. *Id.*

In sum, Dr. Hallek offered the opinion that Plaintiff is impaired to an extent beyond that recognized by the ALJ. Plaintiff asserts that because Dr. Hallek was his treating physician, the ALJ erred by failing to accord controlling weight to her opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). Finally, when according less than controlling weight to the opinion of a treating physician, the ALJ must specifically articulate her

11

rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004).

As the ALJ correctly observed, Dr. Halleck's treatment notes "do not disclose significantly abnormal pathology, and certainly none that is work prohibiting." (Tr. 22, 168-96). Instead, as the ALJ further observed, "Dr. Hallek relied heavily on the subjective reports of symptoms and limitations provided by the claimant, and seemed to accept as true, most, if not all that he reported." (Tr. 22). As discussed above, the objective medical evidence reveals no evidence that Plaintiff suffers from disabling pathology. None of the specialists who examined Plaintiff reported objective findings consistent with total disability or rendered an opinion inconsistent with the ALJ's RFC determination. As another of Plaintiff's treating physicians, Dr. Mahmoud, concluded, Plaintiff's condition necessitated only "conservative therapy." (Tr. 159). In sum, the ALJ properly accorded minimal weight to Dr. Hallek's opinion.

b. The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that "the evidence in the record does not fully support [Plaintiff's] contentions as to the frequency, duration and intensity of his symptoms, including his expressed need to take 'cat naps' and/or recline for extended intervals on most days." (Tr. 20). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is]

12

disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the

witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ properly concluded, Plaintiff's subjective allegations of disabling pain and limitation are not supported by objective medical evidence. As the ALJ also recognized, Plaintiff's reported activities are not consistent with total disability. Plaintiff asserts that the questionnaire submitted by his former wife supports his subjective allegations. A review of this questionnaire, however, fails to support Plaintiff's assertion.

In her questionnaire, Plaintiff's former wife reports that Plaintiff drives, cooks, cares for their children, and visits relatives. (Tr. 93-99). While she also reports that Plaintiff performs little house work or yard work, she does not assert that Plaintiff's lack of activity is due to his physical impairments. Rather, she asserts that Plaintiff is lazy and simply does not care about such things. She further asserts that Plaintiff enjoys socializing with his friends and sometimes does not come home. *Id.* As Defendant correctly observes, the responses to this particular questionnaire are more a reflection on the deterioration of Plaintiff's marriage than supporting evidence for a claim of disability. In sum, there exists substantial evidence to support the ALJ's credibility determination.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: April 26, 2006                                     /s/ Ellen S. Carmody
                                                                    ELLEN S. CARMODY
                                                                    United States Magistrate Judge